# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRIC OF NEW HAMPSHIRE

| | |
|---|---|
| **IN RE: ATRIUM MEDICAL CORP. C-QUR MESH PRODUCTS LIABILITY LIGITATION**<br><br>**THIS DOCUMENT RELATES TO:**<br><br>**ALL CASES** | Master File No. 1:16-md-02753-LM<br>MDL No. 2753<br><br>**LANDYA B. MCCAFFERTY**<br>**U.S. DISTRICT JUDGE** |

### PLAINTIFFS' SURREPLY IN SUPPORT OF THEIR OBJECTION TO GETINGE AB'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Come now Plaintiffs and respectfully submit this Surreply in support of their Objection to Getinge AB's Motion to Dismiss for Lack of Personal Jurisdiction [Dkt. No. 94] and incorporated Memorandum of Law [Dkt No. 94-1].

### Getinge's Reply

Getinge's Reply attempts to creatively explain away several facts alleged and shown by Plaintiffs that undercut its arguments. For example, Getinge explains that it listed its address as Wayne, New Jersey in multiple filed pleadings due to a "clerical error," which it claims was "likely induced" by the Plaintiffs. (Doc. 113, pp. 5-6 n. 6).[1] Getinge next urges that its counsel's acknowledgement on the record that Getinge AB is "essentially the same as" Getinge Group, and that Getinge "does business as" Getinge Group, is subject to interpretation. (Doc. 113, p. 8 and n.

---

[1] Instructively, however, no excuse is offered for why Getinge Group promotes and advertises C-Qur and invites customers to the www.getinggroup.com website (Doc. 94-9), or why the same Wayne, New Jersey address is provided for Getinge Group in letters sent to customers and available on Getinge's website related to C-Qur products, which also directs customers to the www.getingegroup.com website for more information about C-Qur products. (Doc. 94-11). The www.getingegroup.com website, in turn, redirects visitors to the www.getinge.com website, where the C-Qur products are advertised for sale. (Doc. 94-10). Likewise, no explanation is offered for why customers are directed to a getinge.com e-mail address for product ordering information for "formerly Atrium Medical" products. (Doc. 94-11, 94-18).

1

11). Getinge also dismisses its repeated public statements representing Atrium and Getinge as a single entity, and its characterization of Atrium as a "former" company, as merely "shared marketing," and complains that certain of these statements were never intended for a United States audience. (Doc. 113, pp. 8-9, 13-14 and p. 9 n. 14). Irrespective of its counsel's attempted characterization of the facts, the myriad factual disputes highlighted by Getinge's Reply only underscore why Getinge's motion should be denied.

According to Getinge's argument, this MDL Court should conclude that Getinge cannot properly be sued anywhere in the United States, and thus should be dismissed from every present and future MDL case. Getinge thus asks this Court to hold that this nationwide MDL should proceed against what Getinge itself refers to as a "former" company (i.e., an empty shell), all the while Getinge publicly markets, promotes and offers for sale as its own the very products giving rise to this MDL, and continues to enjoy the benefits of selling these products as its own throughout this country. Getinge complains of the "unfairness" and the "excessive burden" of defending these cases in this MDL, even though it has defended similar cases in courts throughout the country for years, including the New Hampshire State Court less than 50 miles from this District Court, without ever raising any jurisdictional defense. Getinge's position in this motion is untenable, and its motion should be denied.

### Argument and Citation of Authority

**(1)** **Getinge's attempt to avoid alter ego liability was recently denied in the related State Court litigation in Hillsborough County, New Hampshire before the Hon. Charles Temple, which further demonstrates the legal invalidity of its present attempt to avoid jurisdiction here.**

In the related New Hampshire State Court litigation involving the same products and same defense counsel, where Getinge has litigated for years without raising a personal jurisdiction defense, Getinge sought to prevent the plaintiffs from amending their complaints to

allege alter ego liability. (Order on Motion for Leave to Amend, **Exhibit 1**).[2] Getinge urged that the proposed amended complaint failed to state a claim for alter ego liability. (*Id.*, p. 6). Judge Temple there noted that "in deciding this issue, the standard of review is akin to that on a motion to dismiss." (*Id.*, p. 7). Upon consideration of similar allegations and arguments to those here, Judge Temple concluded that "the proposed amended complaints allege sufficient facts to survive a motion to dismiss...," and that the facts alleged by the plaintiffs "may warrant piercing the corporate veil under the New Hampshire case law discussed above." (*Id.*, p. 9). Given that the same factual allegations were deemed sufficient to deny a motion to dismiss with respect to alter ego liability, Plaintiffs have clearly alleged ample facts to satisfy the less stringent test for establishing alter ego jurisdiction.

**(2)** **Despite Getinge's attempt to minimize its conduct in this MDL and in prior litigations, the facts support a finding of jurisdiction based on waiver and/or judicial estoppel.**[3]

Getinge's Reply urges that legal positions taken in similar litigation in various jurisdictions should not prevent it from taking a differing position here. Getinge claims that for judicial estoppel to apply, either the Plaintiffs, or this Court, would have to demonstrate "a change of position in reliance upon any action of Getinge AB in this litigation." (Doc. 113, p. 6 n. 8). Getinge's argument disregards the nature of judicial estoppel: "The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding." *N.H. v. Maine*, 532 U.S. 742, 749 (2001). Although not reducible to a formula, courts consider: (1) whether the legal

---

[2] The plaintiffs' original complaints in State Court, filed in 2015, asserted claims against Getinge, but Getinge argued that the claims did not properly allege claims for alter ego liability, which resulted in the Plaintiffs' motion to amend to address the alleged pleading deficiency. Those motions were granted, in spite of Getinge's stringent opposition that it could not be subject to alter ego liability.

[3] Plaintiffs' position regarding Getinge's waiver based on its general appearance and active participation before the JPML and in this MDL, which included pleadings indicating it intended to defend on the merits (Doc. 17, Sec. 3.1.11), was argued in their Response.

positions are clearly inconsistent; (2) whether the prior court accepted the position; (3) whether the party would gain an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id.* at 750-51. Getinge successfully persuaded courts to accept the clearly inconsistent legal position that it was subject to jurisdiction throughout the country, including a California State Court which dismissed a number of hernia mesh product liability claims based on Getinge's stipulation that it would be subject to personal jurisdiction in those plaintiffs' home state courts. (Doc. 94-5). Allowing Getinge to contest jurisdiction here, while taking advantage of our court system elsewhere (including as a plaintiff), would allow an unfair advantage and impose an unfair detriment on Plaintiffs. At a minimum, the fact that Getinge has defended civil cases involving Atrium products throughout the country – including for years in New Hampshire State Court – without ever raising a jurisdictional defense (or else stipulating to jurisdiction), fundamentally undermines its newfound jurisdictional defense here.

**(3)** **Getinge is subject to jurisdiction based on its assumption of Atrium's liabilities, irrespective of the form of the transaction.**

There is no legal support – or validity – for Getinge's contention that it cannot legally assume liabilities of Atrium merely because its acquisition of Atrium was via triangular merger. Plaintiffs have cited case law demonstrating that a parent may assume the liabilities of a subsidiary in a triangular merger; Getinge cites no case holding otherwise.[4] Indeed, any person or entity can assume the liability of another – irrespective of the nature of their legal relationship. Here, the record is replete with facts not only demonstrating that Getinge "can" assume Atrium's

---

[4] To be clear, Plaintiffs do not urge that a triangular merger automatically results in the parent's assumption of the acquired subsidiary's liabilities. The fact that Atrium was acquired by triangular merger actually has little bearing on the assumption of liability legal analysis here. Plaintiffs cited case law involving other courts' analysis of a parent's assumption of liability in the context of a triangular merger to demonstrate the invalidity of Getinge's assertion that a triangular merger somehow precludes any assumption of liability. A parent can assume the liability of a subsidiary, irrespective of the means by which the subsidiary was acquired. When it does – as Getinge has here – it is subject to liability (and jurisdiction) to the same extent as the subsidiary.

4

liabilities, but that it did so – and *continues to do so*. As Getinge's most recent Annual Report states, "**[t]he Parent Company [Getinge AB] guarantees all outstanding liabilities to which the subsidiary companies are subject to at 31 December 2016, until they are satisfied in full and the guarantee is enforceable against the company by any person to whom the subsidiary companies are liable in respect of those liabilities**." (Doc. 94-17, p. 87) (Emphasis added). Getinge is subject to personal jurisdiction based on its assumption of Atrium's liabilities, and its motion should be denied. At a minimum, however, Getinge should be ordered to produce discovery bearing on this issue.

**(4)**     <u>**At best, Getinge's Reply underscores the disputed nature of the facts bearing on the alter ego and agency issues, which precludes its motion to dismiss.**</u>

The alter ego analysis involves a multi-factorial inquiry.[5] Even with respect to liability, courts recognize that the alter ego and agency legal inquiries are fact-intensive and fact-dependent. *See*, *Bennett v. GAF Corp.*, 1994 WL 279752, *2 (D.N.H.1994) ("As no single factor is dispositive, the appropriateness of disregarding the parent/subsidiary distinction is ordinarily a question of fact."). While acknowledging the abundant facts and evidence cited in Plaintiffs' Objection bearing on the alter ego and agency analysis (Doc. 113, p. 13), Getinge argues that all of these facts relate to just one of the several alter ego factors: representing to the public the corporations are a single entity. (Doc. 113, p. 13). First, as recognized in *UHS of Del., Inc. v. United Health Svcs., Inc.*, 2015 WL 539736, *7-*8 (M.D.Pa.2015):

> The fact that the defendants intentionally steer the public's perception of the system to one of a singular, integrated corporate entity is **an important factor** in

---

[5] *Bennett v. GAF Corp.*, 1994 WL 279752, *2 (D.N.H.1994) ("Factors relevant to determining whether the parent's control over the subsidiary warrants 'piercing the corporate veil' include: (1) failure to observe corporate formalities; (2) intermingling of the corporations' properties, accounts, and records; (3) inadequate capitalization of the subsidiary; (4) common officers and directors; (5) representing to the public that the corporations are a single entity; (6) common office space, address, and telephone numbers; (7) failure of corporations to deal with each other at arm's length; (8) payment of the subsidiary's debts, salaries, and other expenses by the parent corporation; and (9) domination of the subsidiary's daily operations and policies by the parent corporation….").

5

the court's analysis. E.g., *Simeone [ex rel. Estate of Albert Francis Simeone v. Bombardier–Rotax GMBH,* 360 F.Supp.2d 665, 678 (M.D.Pa.2009)] (highlighting consumer perception and defendants' indistinct indistinguishable public image as **critical factors** in alter ego determination). The system executives' stated intent of establishing an indistinct identity **weighs heavily in favor of an alter ego finding**. (Emphasis added).[6]

Furthermore, contrary to Getinge's argument, these facts do not reflect a mere "shared marketing campaign." Instead, the evidence shows that Getinge has taken affirmative action to eliminate Atrium's separate corporate existence altogether. The ability of a parent to unilaterally render its subsidiary a "former" corporation, and to essentially take over the subsidiary's "former" corporate existence, is itself evidence of the sort of dominion and control that are the hallmarks of the alter ego analysis. Taking action to render a subsidiary a "former" corporation, and holding the "former" subsidiary's products out as the parent's, not only reflects representing a single entity to the public, but also bears on inadequate capitalization, failure to observe corporate formalities, failure to deal at arm's length, domination of daily operations and policies, and intermingling of corporate properties and records.[7] The facts further show that Getinge has investigated, defended, and paid to settle or resolve multiple civil and criminal claims and regulatory violations against Atrium, which establishes without question Getinge's payment of

---

[6] *In re Latex Gloves Prods. Liab. Litig.*, 2001 WL 964105, *5 (E.D.Pa.2001) ("the use by the [parent and subsidiaries] of the same corporate logo tends to support a finding of both alter-ego and functional and organic identity.").

[7] Even to the extent Getinge claims that Atrium maintains some separate legal existence, it nonetheless appears that Getinge has – at a minimum – undertaken to vertically integrate its subsidiaries through "business units" organized by product/service or geographic region, rather than by corporate boundaries. (Doc. 94-17, p. 19 (referring to Atrium as a "manufacturing unit" or "production unit" in discussing FDA investigation of Atrium); pp. 37 and 46 (discussing policies and reporting requirements implemented by Getinge for all "manufacturing units"); p. 51 ("Getinge's business operations comprise [different] sales regions with sales companies, the Business Category Units Surgical Workflows, Acute Care Therapies and Patient & Post Acute Care Business Category Units, whose main task is to develop world leading technologies and products within their respective fields, as well as the group function supply chain. Each unit is headed by an operational management team responsible for the business activities of each unit."); p. 52 ("Each sales region and supply chain has a financial manager, who is responsible for the financial control of the business unit….")). Such evidence of vertical integration is regularly cited by courts as supporting an alter ego finding. *UHS of Del., Inc. v. United Health Svcs., Inc.*, 2015 WL 539736 at *15; *In re Latex Gloves Prods. Liab. Litig.*, 2001 WL 964105 at *6; *Cali v. E. Coast Aviation Servs., Ltd.,* 178 F.Supp.2d 276, 289 (E.D.N.Y.2001).

6

Atrium's debts and other expenses. In short, Plaintiffs have specifically alleged – and demonstrated – facts bearing on nearly every one of the alter ego factors. While Getinge offers its own alternative characterization of the facts, these factual disputes nonetheless demonstrate that these issues cannot be decided by way of a motion to dismiss. *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements, Ltd.*, 328 F.3d 1122, 1134 (9th Cir.2003) ("the plaintiff need only make a prima facie showing of jurisdiction to avoid the defendant's motion to dismiss…. [The plaintiff] need only demonstrate facts that if true would support jurisdiction over the defendant…. Unless directly contravened, [the plaintiff's] version of the facts is taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in [the plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.").

Getinge urges that its counsel's admission on the record that Getinge "does business as" Getinge Group and that Getinge and Getinge Group are "essentially the same thing" was something other than what the record reflects. (Doc. 113, p. 8 and n. 11). Getinge's purported interpretation of the transcript is belied by Getinge's public statements regarding Getinge Group. In its most recent publicly-available Annual Report (Doc. 94-17), Getinge consistently and interchangeably refers to itself as "Getinge," "Getinge Group," and "The Group." (*See, e.g.*, Doc. 94-17, p. 48 ("Getinge AB (publ) is a Swedish public limited liability company…Getinge Group is a global company in the medical device field with operations in 44 countries and proprietary production in 11 countries."). The Annual Report also states that Reinhard Mayer – who filed the Declaration in support of the instant motion stating that he is CFO of Getinge AB (Doc. 76-2) – has been "[e]mployed at Getinge Group since 2002," and was appointed CFO of "Getinge Group." (Doc. 94-17, p. 55 and 45 ("In the third quarter, Getinge Group appointed Reinhard

Mayer as the new CFO….")). The Annual Report further reflects that Atrium was acquired by "Getinge Group" (*Id.*, p. 93), and that yet another settlement involving Atrium's malfeasance was reflected in the "Getinge Group" financial statements. (*Id.*, p. 45). As Getinge's own Annual Report unambiguously reflects, and as its counsel acknowledged on the record, Getinge does business as Getinge Group, and the two are the same.

Instructively, the Getinge Annual Report (Doc. 94-17, p. 62) also explained as follows:

> Consolidated financial statements
> **Subsidiaries are all companies (including structured entities) over which the Group exercises <u>a controlling influence</u>. The Group <u>controls</u> a company when it is exposed to or has the right to variability of returns from its holding in the company and can affect these returns through <u>its influence over the company</u>**. The **<u>controlling influence</u>** is usually transferred at the acquisition date. Acquired companies are consolidated into the consolidated financial statements in accordance with the purchase method, which means that the cost of the shares in subsidiaries is eliminated against their shareholders' equity at the acquisition date.

(Emphasis added).

In light of its own public pronouncements, and the abundant facts shown by Plaintiffs in their Master Complaint and in Response to its motion to dismiss, Getinge's contention that it should be dismissed from these cases is meritless. The factual allegations and showings by Plaintiffs are more than sufficient to deny of Getinge's motion to dismiss outright, but at a minimum, jurisdictional discovery is warranted.

**(5)** **<u>Getinge's "burden of appearing" argument is wholly devoid of merit.</u>**

Although relegated to a footnote in its Reply, Getinge urges that "[i]t would be exceptionally burdensome for [it] to appear in this forum," apparently based on nothing more than the fact that it is a Swedish corporation. (Doc. 113, p. 10 n. 15). This argument embodies the invalidity of Getinge's motion in general.

8

As shown in Plaintiffs' Objection, Getinge has participated in civil litigation arising from Atrium's products in jurisdictions throughout this country. (Docs. 94-5, 94-6, 94-7). Indeed, Getinge filed suit itself against Atrium's founder in a United States court, which lawsuit arose entirely from Getinge's legal responsibility for Atrium's malfeasance, including hernia mesh product liability claims and an FDA investigation and DOJ complaint against Atrium (also in the District of New Hampshire). (Doc. 94-8; 94-14). In fact, Getinge has been defending the related New Hampshire state court litigation – involving the same C-Qur products and the same defense lawyers representing it here – for more than two years, without ever raising any issue regarding any alleged lack of jurisdiction, let alone any "exceptional burden."

Moreover, Getinge has purposefully availed itself of the benefits of doing business in this country, advertising on its website and in U.S. magazines, and sending letters to U.S. doctors – specifically marketing and promoting the C-Qur product at issue in this MDL, which it consistently describes as its product. (Docs. 94-9, 94-10, 94-11, 94-18, 94-19). Getinge "does business as" Getinge Group, which openly represents to the public a U.S. business address. (Doc. 94-11). Moreover, as shown through Plaintiffs' Objection, it readily appears that Getinge has taken over the corporate existence of what Getinge consistently describes as "formerly Atrium Medical Corp.," urging customers to contact it about the C-Qur products that had been sold by "formerly Atrium Medical Corp." (Docs. 94-11, 94-18, 94-19).

Any claim that defending itself in this Court for these C-Qur product liability claims – involving products it represents and promotes as its own in its own marketing materials and on its own website – is as invalid as it is telling. This motion is without basis in law or fact, and should be denied outright. Even if the motion is not denied on its face, however, Plaintiffs

should be allowed to obtain discovery to address the numerous disputed issues of fact bearing on the jurisdictional defenses asserted here.

        Respectfully submitted,

        **UPTON & HATFIELD LLP**

By:   */s/ Susan Aileen Lowry*
      Susan Aileen Lowry (NHBA 18955)
      10 Centre Street, P.O. Box 1090
      Concord, NH 03302-1090
      (603) 224-7791
      slowry@uptonhatfield.com

*/s/ Russell F. Hilliard*
Russell F. Hilliard (NHBA 1159)
159 Middle Street
Portsmouth, NH 03801
(603) 436-7046
rhilliard@uptonhatfield.com

**MOTLEY RICE, LLC**
*/s/ Jonathan D. Orent*
Jonathan D. Orent
55 Cedar Street, Suite 100
Providence, RI 02903
TEL: (401)457-7723
FAX: (401)457-7708
jorent@motleyrice.com

**HOLLIS LAW FIRM, P.A.**
/s/ *Adam M. Evans*
Adam M. Evans
5100 W. 95th St.
Prairie Village, KS 66207
(913) 385-5400
(913) 385-5402 (fax)
adam@hollislawfirm.com

**GORI, JULIAN & ASSOC. P.C.**
*/s/ D. Todd Mathews*
159 N. Main St.
Edwardsville, IL 62025
(618) 659-9833

(618) 659-9834
Todd@gorijulianlaw.com

**HOLMAN SCHIAVONE, LLC**
/s/ *Anne Schiavone*
Anne Schiavone
4600 Madison Avenue, Suite 810
Kansas City, Missouri 64112
TEL: (816) 283-8738
FAX: (816) 283-8739
aschiavone@hslawllc.com

**BAILEY & GLASSER LLP**
/s/ *David L. Selby, II*
David L. Selby, II
3000 Riverchase Galleria, Suite 905
Birmingham, Alabama 35244
Tel.: (205) 988-9253
Email: dselby@baileyglasser.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 27, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the CM/ECF participants registered to receive service in this action.

*/s/ Susan Aileen Lowry*
Susan Aileen Lowry (NHBA 18955)